UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CLAYTON R. POEHL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV928 CDP |
| | ) | |
| COUNTRYWIDE HOME LOANS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Countrywide Home Loans, Inc. mailed Clayton Poehl two flyers stating that he had been pre-approved for at least a $50,000 loan. Poehl filed this purported class action claim, alleging that Countrywide violated his rights under the Fair Credit Reporting Act because it obtained information about his credit without his consent in order to send him the mailing.[1] Countrywide moves for judgment on the pleadings, arguing that it was allowed to access Poehl's credit information because the flyers constituted a "firm offer of credit" as defined by the Act. I agree that Countrywide's offer had some value to the consumer, so it was a "firm

---

[1] Poehl originally sued two other companies in this action. I dismissed his claim against Homeowners Loan Corp. in an order dated November 1, 2006. On December 26, 2006, his claim against Ocean Bank, FSB was separated and transferred to the Northern District of Illinois for inclusion in coordinated and consolidated pretrial proceedings by the Judicial Panel on Multidistrict Litigation.

offer of credit" as Congress used the term in the Act. Countrywide cannot be liable to Poehl for obtaining his credit information for this purpose, and so I will grant the motion for judgment on the pleadings.

**I.     Background**

The complaint alleges that in June 2005 and January 2006, Poehl received "prescreened" promotional letters from Countrywide. Poehl alleges that Countrywide accessed his credit report without his consent to obtain the information for this prescreening.

The front side of the January 2006 letter states in relevant part: "Congratulations! You've been pre-approved[1] for a refinance loan from Countrywide Home Loans' Full Spectrum® Lending Division for up to 90% off the value of your home!" and "Simply make all your payments on time, and your rate will drop each year for the first four years - by as much as 1.5%.[2]" At the bottom of the front side of the mailer a notation indicates Poehl should "See PRESCREEN & OPT-OUT NOTICE on the other side of the loan summary page for details." The reverse side of the mailer sets forth additional loan details, including: "Minimum loan amount $50,000 in all states except Michigan, $10,000 min. in Michigan." It also contains restrictions and conditions, including:

This offer is based on information obtained from a credit bureau.

> You received this offer because you met the criteria at the time this information was obtained. Your loan amount and terms may vary, or the offer may be withdrawn, if you no longer meet the credit, income, debt, and property value criteria. Loans are available for up to 90% loan-to-value ratio. Property value is established by an appraisal. A security interest will be taken on your home.

The mailer further contains a statement that "On-time payments may result in a reduction in interest rate during the first four years of the 15 or 30 year loans. Restrictions apply. Ask for details." The mailer does not specify the APR or specific terms of the loan other than the loan amount.

The June 2005 is very similar. The front page states in relevant part: "**You're already pre-approved for a refinance loan from Full Spectrum® Lending!**" The reverse side of the mailer sets forth additional loan details including: "Minimum loan amount $50,000 in all states except Michigan, $10,000 min. in Michigan." It then contains the identical statement of restrictions and conditions quoted above from the January 2006 mailing, as well as the identical statement about on-time payments possibly reducing interest rates for some loans. As with the later mailing, this one also does not specify the APR or specific terms of the loan other than the loan amount.

## II. Motion for Judgment on the Pleadings Standard

Countrywide has moved for judgment on the pleadings under Rule 12(c),

Fed. R. Civ. P. The same standard of review governs a motion for judgment on the pleadings under Rule 12(c) as a motion to dismiss under Rule 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. When considering a motion pursuant to Rule 12(b)(6), the court must assume all factual allegations of the complaint are true and must construe those allegations in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326 (1989). The Federal Rules do not require great precision in pleadings. Gregory v. Dillard's, 2007 WL 2067853, at *15 (8th Cir. July 20, 2007). "The simplified notice pleading standard under Fed. R. Civ. P. 8(a) requires only a statement that gives the defendant fair notice of what the plaintiffs' claim is and the grounds upon which it rests." Id. (internal quotation omitted). However, the factual allegations in the complaint must be more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).

When ruling on a motion to dismiss, a court must primarily consider the allegations contained in the complaint, but other matters referenced in the complaint may also be taken into account. Deerbrook Pavilion, LLC, v. Shalala, 235 F.3d 1100, 1102 (8th Cir. 2000). "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Fed. R. Civ. P. 10(c).

Because the mailers are attached as an exhibit to Poehl's complaint, I may consider their terms in ruling on the motion to dismiss. See Centers v. Centennial Mortg., Inc., 398 F.3d 930, 933 (7th Cir. 2005) ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to relief.").

### III.   Discussion

Congress passed the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., to preserve consumer privacy in the information maintained by consumer reporting agencies. See § 1681(a)(4) ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy"). The act sets out certain permissible purposes for which a consumer reporting agency may release credit reports and prohibits other releases. § 1681b(a). Most of the permissible purposes involve situations where the consumer has authorized or initiated the release, but there are exceptions.

One of the exceptions allows a credit provider to access consumer information in order to make a "firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(i). This provision enables a credit provider such as Countrywide to provide certain criteria to a credit agency and then to receive – without the

consumers' consent – basic contact information about consumers who meet those criteria. The exception does not allow a potential lender to access the full credit report, but instead allows it to obtain the consumer's name, address, and other information that does not identify any particular past credit transaction of that consumer.

In creating this exception, Congress allowed lenders such as the defendant to access credit reports for the purpose of making unsolicited mailings to consumers, so long as the lender actually offered the consumer something, that is, so long as the lender made a "firm offer of credit." As one court has noted, Congress "balanced any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers identified through the screening process." Cole v. U. S. Capital, Inc., 389 F.3d 719, 725 (7th Cir. 2004) (quoting S. Rep. No. 103-209, 13 (1993)). "Congress apparently believes that people are more willing to reveal personal information in return for guaranteed offers of credit than for catalog and sales pitches." Trans Union Corp. v. FTC, 267 F.3d 1138, 1143 (D.C. Cir. 2001).

Congress, however, did not specify what, if any, credit terms had to be included for something to be a "firm offer." The statute does not require the loan amount, interest rate, or a payback period to be stated. Instead, the FCRA defines

"firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l). The statute provides that the offer may be conditioned on three specific requirements. First, the creditor may apply additional pre-selection criteria relating to the consumer's creditworthiness. § 1681a(l)(1). Second, the offer may be conditioned on verification "that the consumer continues to meet the specific criteria used to select the consumer for the offer." § 1681a(l)(2). Finally, the firm offer may be conditioned on the consumer's furnishing any collateral that was established before the selection of the consumer for the offer and was disclosed in the offer. §1681a(l)(3). Contrary to Poehl's argument, the general definition of the word "offer" under federal law does not apply in this case because Congress has specifically defined the meaning of the phrase "firm offer."

Poehl is one of many plaintiffs who have recently filed actions under the statute after receiving unsolicited mailings from companies seeking to lend them money.² Courts deciding whether a particular flyer fits the "firm offer of credit"

---

² Indeed, as noted above, this Court has already dismissed his claim against Homeowners Loan Corp., a different defendant in his suit, after finding that Homeowner's flyer constituted a firm offer of credit.

exception have struggled to articulate a consistent definition or test. I have concluded that a firm offer of credit must have some value to a consumer that is more than nominal.

The "some value" test comes from Cole v. U. S. Capital, Inc., 389 F.3d 719 (7th Cir. 2004). In Cole the court held that an unsolicited mailing offering a $300 credit that could only be used to purchase a vehicle at a particular car dealership did not have any value to the consumer, and therefore was not covered by the FCRA exception.[3] The court rejected the defendant's argument that some offer of guaranteed credit – no matter how small – met the statutory definition, because that would allow anyone to access a consumer's credit report simply by offering, for example, one dollar in guaranteed credit. So, the court reasoned, there must be "sufficient value for the consumer to justify the absence of the statutory protection of his privacy." Id. at 726. Otherwise an offer of credit would be no more than a sham, or the equivalent of an advertisement. " . . . Congress did not intend to allow access to consumer credit information 'for catalogs and sales pitches.'" Id. at 727 (quoting Trans Union, 267 F.3d at 1143). Courts must look to the entire offer and all material conditions of the credit product to make this determination.

---

[3] The Cole mailer appeared to offer other things, including a $2000 limit credit card and $19,500 auto financing, but because the flyer also said that approval of those offers was not guaranteed, the Court considered only whether the $300 credit had value.

If the offer was "a guise for solicitation rather than a legitimate credit product" it cannot be a firm offer. Id. at 728. Additionally, the Court noted that terms such as interest rate, methods of computing interest, and length of repayment "may be so onerous as to deprive the offer of any appreciable value." Id.

The Seventh Circuit noted, in <u>Murray v. GMAC Mortgage Corp.</u>, 434 F.3d 948, 955-56 (7th Cir. 2006), that the value of an offer is an objective standard, and stated that courts should look to the four corners of the offer to determine whether it has value. More recently, in <u>Perry v. First National Bank</u>, 459 F.3d. 816 (7th Cir. 2006), the court found that an offer of a $250 limit credit card had sufficient value to fit the statutory exception, even though the interest rate was 18.9% and the fees would result in the consumer being billed $175 in the first monthly bill.

Several cases have interpreted <u>Cole</u> strictly, and have held that there can be no firm offer unless all material terms such as amount and interest rate are defined. For example, in <u>Hernandez v. Chase Bank USA, N.A.</u>, 429 F. Supp. 2d 983 (N.D. Ill. 2006), the court found no firm offer of credit in a flyer stating that the recipient had been "pre-qualified for up to $100,000 or more" to be secured by the recipient's residence. The court held that the terms of the loan were so vague that they had no value to a consumer. The loan would only be issued depending on information to be provided by the consumer, and the terms could be changed

without notice. 429 F. Supp. 2d at 988. In Murray v. E*Trade Financial Corp., 2006 WL 2054381 (N.D. Ill. July 19, 2006), the court interpreted Cole to say that there is no value if the interest rate or repayment provisions are not included. Id. at *3. In Murray v. Finance America, LLC, 2006 WL 862832 (N.D. Ill. April 4, 2006), there was no firm offer where the amount of the loan, the interest rate, and length of time were not specified. See also Klutho v. Home Loan Center, Inc., No.4:06CV1212CDP, 2006 WL 3836389 (E.D. Mo. Nov. 1, 2006).

On the other hand, several courts have granted motions for summary judgment or to dismiss, finding that the firm offer of credit exception applied even in the absence of specified interest rates or other terms. In Murray v. HSBC Auto Finance, Inc., 2006 WL 2861954 (N.D. Ill. Sept. 27, 2006), the Court found a firm offer of credit where the flyer said the person had been pre-selected for an auto refinance loan in a minimum amount of $5000. The flyer also stated that the recipient might be able to reduce her rate by as much of 5.04%, and that percentage was based on the average rate reduction obtained by the defendant's customers. The court in Bonner v. Cortrust Bank, N.A., 2006 WL 1980183 (N.D. Ind. July 12, 2006), which was decided before the Seventh Circuit's Perry case, considered a credit card offer similar to that in Perry and concluded that it met the firm offer of credit definition. In Purkowski v. Irwin Home Equity Corp., 423 F.

Supp. 2d 1053 (N.D. Cal. 2006), a mailer offering a minimum 20-year, $15,000 line of credit with a maximum interest rate of 24% was a firm offer of credit. See also Klutho v. GE Money Bank, No. 4:06CV1319HEA, 2007 WL 162291 (E.D. Mo. Jan. 17, 2007); Poehl v. Countrywide Home Loans, Inc., 464 F. Supp. 2d 882 (E.D. Mo. 2006).

Congress carefully crafted its definition of "firm offer" and chose not to require that the lender specify particular loan terms. Instead, Congress provided a number of "outs" for a lender, including additional pre-selection criteria, verification, and collateral requirements. If Congress had wanted the FCRA to require that loan amounts, interest rates, or payback times be specified in a "firm offer," it could have done so. So long as the statutory criteria are met, and so long as there is some value to the consumer so that the offer is not a sham or mere solicitation, then the absence of interest rates and other terms does not prevent the offer from being a "firm offer of credit."

In this case, the offer is for a home loan of at least $50,000. While the offer states that the actual loan amount "may vary," it states an absolute minimum loan amount which is more than a nominal amount such as one dollar, as the Cole defendants urged was sufficient. Although the rest of the terms of the loan are not disclosed on the face of the mailer, a reasonable consumer viewing this mailer

would believe that it contains some value because it has offered a minimum amount of money, even to persons who might otherwise have credit problems. This is a real offer even if many of the terms and conditions have not been revealed. I will therefore grant Countrywide's motion for judgment on the pleadings.

As noted above, I previously dismissed Poehl's claims against Homeowners, and his claims against Ocean Bank have been transferred to the Northern District of Illinois for pretrial purposes as part of multidistrict case MDL # 1778. Poehl recently moved for a stay of this matter because there is now a multidistrict case involving Countrywide, but there is no reason to do that since my dismissal of this case will dispose of the claim against Countrywide.

Countrywide seeks the entry of a separate final judgment in its favor under Rule 54(b), Fed. R. Civ. P. Under Rule 54(b), I may "direct the entry of a final judgment as to one or more but fewer than all of the claims or parties" if I make an express determination that there is no just reason for delay and make an express direction for the entry of judgment. Relevant factors in making a Rule 54(b) determination include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the

> possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Hayden v. McDonald, 719 F.2d 266, 269 (8th Cir. 1983).

As stated above, the only claim remaining is Poehl's claim against Ocean Bank, and that claim has been severed and transferred to another court for pretrial proceedings. While it may ultimately come back here for trial, there is no relationship between the Poehl's claim against Ocean Bank and Poehl's claim against Countrywide or his claims against Homeowners. Each claim was based on a different mailing by a different defendant. In a similar FCRA case, Klutho v. Ameriquest Mortgage Co., No. 4:06CV746 CDP (E.D. Mo. July 31, 2006), I granted the defendants' motion to sever and ordered the plaintiff to refile his complaint against three of the defendants with three separate complaints because the cases were not factually related. As in this case, there was no overlap between the claims. Any decision that might later be reached regarding Ocean Bank's claim would have no bearing on my determination here, because the flyers are different. All of the Rule 54(d) factors favor the entry of a final judgment on Poehl's claims against both Countrywide and Homeowners, and there is no just

- 13 -

reason for delay.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Countrywide Home Loans Ins.'s motion for judgment on the pleadings [#38] is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff Clayton Poehl's motion for leave to file designation of class sought to be certified out of time is DENIED [#41] as moot.

**IT IS FURTHER ORDERED** that Defendant Countrywide Home Loans, Inc.'s request that I certify this order as final and appealable under Rule 54(b) is GRANTED, and I will enter final judgment as to both Countrywide and as to Homeowners.

A separate Judgment in accordance with this Memorandum and Order will be issued this same day.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of August, 2007